## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**MIRIAM KINGSBERRY,**
**Parent and Next Friend of "Minor,"**
      **Plaintiff,**

      **v.**                                        Civil Action No.  03-2378(RMU/JMF)

**DISTRICT OF COLUMBIA** *et al.*,
      **Defendants.**

### MEMORANDUM OPINION

This case was referred to me for resolution of <u>Plaintiff's Motion for an Award of</u>

<u>Attorneys' Fees and Costs</u>.  For the reasons stated herein, plaintiff's motion is granted in part and

denied in part.

### BACKGROUND

Plaintiff Miriam Kingsberry is the parent of "Minor," who is considered disabled for the

purposes of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*

On November 17, 2003, plaintiff filed suit in federal court claiming that "the District of

Columbia Public School System ("DCPS") violated Minor's right under the IDEA to a Free and

Appropriate Public Education ("FAPE") by denying Minor certain educational reevaluations and

denying the plaintiff access to Minor's educational records."  <u>Kingsberry v. District of Columbia</u>,

03-cv-02378, slip op. at 1 (D.D.C. Feb. 7, 2005).

Prior to bringing this suit, plaintiff petitioned for an administrative hearing on similar

grounds.  <u>Id.</u> at 3.  On September 30, 2003, the administrative hearing officer ("HO") "dismissed

the plaintiff's petition with prejudice, holding that neither the denial of the reevaluation nor the

plaintiff's inability to access Minor's record constituted a violation of the IDEA."  <u>Id.</u> (citation

omitted).  The HO also denied the plaintiff's motion for reconsideration, holding that "the plaintiff's request for records and reevaluation had no reasonable relationship to Minor's academic performance."  Id. (citation omitted).

Having thus exhausted her administrative remedies, the plaintiff filed the instant lawsuit and subsequently moved for summary judgment.  Id. at 1.  On February 7, 2005, the court granted partial summary judgment in plaintiff's favor, holding that the HO had committed legal error regarding the plaintiff's request for reevaluation.  Id. at 10.  However, the court sustained the HO's determination regarding plaintiff's request for records and denied plaintiff summary judgment on that issue.  Id. at 12.

Plaintiff has now filed a Motion for an Award of Attorney's Fees and Costs ("Pl's. Mot.") pursuant to 20 U.S.C. § 1415(i)(3)(B) (2000).  In ruling on the motion, this court will consider the plaintiff's eligibility for attorneys' fees, the reasonableness of the fees requested, and whether the authority vested in the court to award reasonable attorneys' fees is restricted by the District of Columbia Appropriations Act of 2005.

## DISCUSSION

I.    Plaintiff's Eligibility for Attorneys' Fees

"[T]he court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party."  20 U.S.C. § 1415(i)(3)(B). "[S]ection 1415(i)(3)(B) also authorizes a parent who prevails in an IDEA administrative hearing to recover attorney's fees by filing suit for the fees in federal court."  Kaseman v. District of Columbia, 329 F. Supp. 2d 20, 23 (D.D.C. 2004) (citations omitted).

In order to qualify as a prevailing party, it is not necessary for parents to obtain all the relief that they initially sought.  However, "there must be an 'alteration in the legal relationship

of the parties' that has been given some judicial *imprimatur. . . .*" in order for a court to award attorneys' fees.  Armstrong v. Vance, 328 F. Supp. 2d 50, 57 (D.D.C. 2004) (quoting Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res., 532 U.S. 598, 605 (2001).

In this case, the court partially granted plaintiff's motion for summary judgment, affirming plaintiff's right to any future reevaluations that may be necessary for the ongoing development of Minor's educational program.  See Kingsberry v. District of Columbia, 03-cv-02378, slip op. at 10 (D.D.C. Feb. 7, 2005) (quoting 34 C.F.R. § 300.536(b)) ("[P]ublic agencies 'shall ensure' that a child receives a reevaluation when the child's parent makes such a request").  This determination operates as an enforceable judgment on the merits and creates "'the "material alteration of the legal relationship of the parties" necessary to permit an award of attorney's fees.'"  Armstrong, 328 F. Supp. 2d at 57 (quoting Buckhannon, 532 U.S. at 604 (citation omitted)).  Defendants do not contest plaintiff's prevailing party status.  Defendant's Opposition to Plaintiff's Motion for Attorneys' Fees and Costs ("Def's. Opp'n") at 1.

Further, this court finds that plaintiff obtained essentially complete relief, despite having prevailed on only one of her two claims.  The purpose of the instant suit was to ensure that Minor received the FAPE to which he was entitled under the IDEA.   In July 2003, plaintiff requested Minor's educational records and was told that no records could be located.  Complaint at 3.  Minor was then transferred from Drapier Elementary School to Kramer Middle School in September 2003.  Id. at 2.   According to plaintiff, because there were no records available to either herself or Kramer Middle School, Kramer was unable to provide Minor with the services contained in his educational program.  Id. at 3.  Plaintiff therefore requested that Minor be reevaluated in order to secure FAPE.  Id.  When this request was denied, plaintiff filed for

administrative and legal redress.

As stated above, Minor prevailed on his request for reevaluation but failed to convince the court on his claim regarding his educational records.  When the district court affirmed plaintiff's right to the reevaluation of Minor upon request, however, it served the larger purpose of ensuring Minor's right to FAPE.  In other words, by prevailing on that claim, plaintiff obtained essentially complete relief.  As the Supreme Court has stated, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . .  In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983) (citing Davis v. County of Los Angeles, No. 73-63-WPG, 1974 WL 180 (C.D. Cal. June 5, 1974)).  Therefore, this court will not reduce the fees awarded to plaintiff's counsel, even though plaintiff prevailed on only one of her two claims.

II.     Reasonableness of Attorney's Fees

Having determined that plaintiff is entitled to reasonable attorneys' fees, the court must now turn its attention to the appropriate measure of those fees.  The text of the IDEA provides that attorneys' fee awards "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. § 1415(i)(3)(C).  However,

> [w]henever the court finds that . . . the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience [] [or] the time spent and legal services furnished were excessive considering the nature of the action or proceeding . . . the court shall reduce, accordingly, the amount of the attorneys' fees awarded. . . .

20 U.S.C. § 1415(i)(3)(F)(ii), (iii).  This statutory scheme is consistent with the three-part

framework that has been employed in this Circuit to evaluate the reasonableness of fee awards generally: "'(1) determination of the number of hours reasonably expended in litigation; (2) determination of a reasonable hourly rate or "lodestar"; and (3) the use of multipliers as merited.'" Covington v. District of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (quoting Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516, 1517 (D.C. Cir. 1988) (en banc) (citation omitted)). "While the Court is empowered to exercise its discretion in determining the fee amount, the plaintiff still bears the burden of establishing all elements of the requested fee award, including entitlement to an award, documentation of appropriate hours, and justifications of the reasonableness of the billing." Smith v. District of Columbia, No. Civ.A.02-373, 2005 WL 914773, at *2 (D.D.C. Apr. 18, 2005) (citing Blum v. Stenson, 465 U.S. 886, 896 (1984)).

A.     *Hours Reasonably Expended*

"Plaintiffs may satisfy their burden of demonstrating that the number of hours expended on particular tasks was reasonable by submitting invoices that are sufficiently detailed to 'permit the District Court to make an independent determination whether or not the hours claimed are justified.'" Kaseman, 329 F. Supp. 2d at 26 (quoting Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1327 (D.C. Cir. 1982)).  The plaintiff in this case has submitted detailed invoices for legal services related to both the administrative hearings and the court litigation.

In their opposition to plaintiff's motion for fees, defendants object to being charged both for the scanning of the complaint for 1.2 hours on November 18, 2003 and the re-scanning of the complaint for 1.3 hours on November 21, 2003.  Def.'s Opp'n at 5.  Defendants also object to paralegal Kelly Dau's billing 3.2 hours for reviewing and editing the final draft of the complaint, preparing the summons and complaint, and reproducing attachments for filing on the same day

that attorney Ann Ford billed 2.5 hours for reviewing and completing the final draft of the complaint and assembling the attachments.  Id.  Defendants state that these tasks are "clearly duplicative" and ask that the court reduce the number of hours billed for each of these tasks by half.  Id.  In response, plaintiff states that "the time expended in providing quality representation . . . was reasonable in all respects."  Reply to Defendant's Opposition to Plaintiff's Motion for Attorney Fees ("Pl's. Reply") at 3-4.

This court agrees that defendants should not have to pay for the re-scanning of the complaint, and the hours devoted to that activity will not be reimbursed.  However, this court cannot agree that the hours spent by Ms. Dau and Ms. Ford preparing the summons and complaint for filing are duplicative.  The billing records submitted by plaintiff indicate that Ms. Ford reviewed the second draft of the complaint and prepared the final draft, while Ms. Dau reviewed the final draft.   Further, Ms. Ford's entry indicated that she assembled the attachments in question while Ms. Dau's entry indicates that she reproduced them.  None of these activities is either unusual or duplicative.  Further, at least some portion of the hours in question was spent by Ms. Ford and Ms. Dau on completely different tasks; Ms. Ford had a telephone conference with a process server, while Ms. Dau prepared the summons.  Accordingly, this court will only strike the hours spent re-scanning the complaint, reducing Ms. Dau's total hours expended from 9.0 hours to 7.8 hours.

       B.    *Reasonableness of Hourly Rate*

An attorney's usual billing rate, when "'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation,'" is presumptively reasonable.  Martini v. Fed. Nat'l Mortgage Ass'n, 977 F. Supp. 482, 485 (D.D.C. 1997) (citing Kattan v. District of Columbia, 995 F.2d 274, 278 (D.C. Cir. 1993) (citation

omitted)).  Accordingly, "[c]ourts in this Circuit have found rates charged by attorneys in IDEA actions to be reasonable if they conform to the United States Attorney's Office *Laffey* Matrix." Kaseman, 329 F. Supp. 2d at 25-26.

Four attorneys were identified on the invoices submitted by plaintiff, but only Tilman Gerald's rate was contested by defendants.  Specifically, defendants claim that Mr. Gerald's declaration does not adequately describe a "level of expertise in the field of special education" sufficient to justify his rate of $375.00 per hour.  Def's. Opp'n at 4.  Plaintiff asserts that Mr. Gerald's hourly rate is supported by the *Laffey* Matrix, which indicates a rate of up to $380.00 per hour for attorneys with 20 or more years of experience.  Pl's. Reply at 2.  Plaintiff also asserts that the length of time spent in a particular practice area is not proof of an attorney's skill in that area, and that after 28 years as a litigator, Mr. Gerald "has the ability to grasp the nuances of a given area of law and to effectively coalesce that ability with prior practice experience." Id. Plaintiff also notes that "the expertise of [p]laintiff's counsel was sufficient for him to obtain a favorable ruling against the [d]efendant in this matter." Id. at 3.

Because Mr. Gerald's normal hourly rate for the billing period in question was within the range suggested by the *Laffey* Matrix for an attorney of 20 or more years of experience, the rate is presumptively reasonable.  In order to rebut the presumption, the government must produce evidence that the rate is erroneous.  Covington, 57 F.3d at 1109.  In addition,

> [a]lthough there may be occasions in which the applicant's showing is so weak that the [g]overnment may without more simply challenge the rate as unsubstantiated, in the normal case the [g]overnment must either accede to the applicant's requested rate or provide specific contrary evidence tending to show that a lower rate would be appropriate.

Covington, 57 F.3d at 1109-10 (citing Concerned Veterans, 675 F.2d at 1326).

In this case, defendants claim only that Mr. Gerald's level of special education experience

fails to justify his rate.  It is unclear whether defendants intended to argue that only years of

experience in special education are relevant to the determination of reasonable rates using the

*Laffey* Matrix, or that the prevailing rate for special education litigation is lower than for other

types of complex federal litigation (rendering the *Laffey* Matrix inapplicable to the calculation at

hand).  Either way, defendants' challenge must fail for lack of support.  In the first instance, this

court has no reason to believe that Mr. Gerald's general civil experience was inapposite to the

outcome of this case.  In the second, it is worth noting that a similar "submarket" theory was

specifically rejected by the Court of Appeals for the District of Columbia Circuit in <u>Covington</u>.

57 F.3d at 1106 (citation omitted) ("[T]he District Court rejected the District's submarket theory,

noting that the District had failed to convince the court 'that lawyers handling civil rights,

employment, or discrimination cases for plaintiffs constitute a sub-market of their own,' and that

'the prevailing rate in the sub-market . . . is . . . lower than the rate prevailing in the broader legal

market' of complex federal litigation.")).  <u>But see</u> <u>Abraham v. District of Columbia</u>, 338 F. Supp.

2d 113, 124 (D.D.C. 2004) (crediting plaintiff's attorney with no more than 15 years of *relevant*

experience for the purpose of awarding fees using the *Laffey* Matrix)).  Because plaintiff has

shown that Mr. Gerald's requested rate is consistent with the rates contained in the *Laffey* Matrix

for an attorney of his experience and defendants have failed to show that the requested rate is

erroneous, the court finds Mr. Gerald's rate of $375.00 per hour to be reasonable.

     Attorney James E. Brown's regular billing rate of $350.00 per hour is likewise found to

be reasonable as it is within the *Laffey* range for attorneys with 20 or more years of experience.

However, the regular billing rates of attorneys Ann Ford and Roberta Gambale, with eight and

nine years of experience respectively, will be reduced from $275.00 per hour to $270.00 per hour

to be consistent with the *Laffey* rates.  Defendants did not challenge the regular rates of plaintiff's

paralegals or other staff, which this court also believes are reasonable.

III.   District of Columbia Appropriations Act

The District of Columbia Appropriations Act of 2005 ("2005 Act") states:

> None of the funds contained in this Act may be made available to pay . . .
> the fees of an attorney who represents a party in an action or an attorney
> who defends an action, including an administrative proceeding, brought
> against the District of Columbia Public Schools under the [IDEA] in
> excess of $4,000 for that action . . . .

District of Columbia Appropriations Act of 2005, Pub, L. No. 108-335, § 327(1), 118. Stat. 1332

(2004).  Identical language is also found in the 2003 and 2004 Consolidated Appropriations Acts.

Consolidated Appropriations Act, 2004, Pub. L. No. 108-199, § 432(1), 118 Stat. 3 (2004);

Consolidated Appropriations Resolution, Pub. L. No. 108-7, § 144(1), 117 Stat. 132 (2003).  The

effect of these acts is to cap the amount of attorneys' fees that the District of Columbia can pay

prevailing parties in IDEA actions and proceedings.  Kaseman, 329 F. Supp. 2d at 23.

In their opposition, defendants attempt to argue that "[i]n light of the fee cap, any award

of fees by the court in excess of the limitations of Section 327(1) [of the 2005 Act] would be

inconsistent with the Appropriations Clause of the United States Constitution, Art. I, § 9, Cl. 7."

Def's. Opp'n at 5.  Defendants rely primarily for support on Office of Personnel Management v.

Richmond,  where the Supreme Court held that per "the straightforward and explicit command of

the Appropriations Clause . . . 'no money can be paid out of the Treasury unless it has been

appropriated by an act of Congress.'"  Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 424

(1990) (quoting Cincinnati Soap Co. v. United States, 301 U.S. 308, 321 (1937) (citation

omitted)).  However, Richmond is easily distinguishable from the instant case.  In Richmond, the

plaintiff was seeking to estop the government from denying him benefits not otherwise

authorized by statute.  Richmond, 496 U.S. at 416.  In this case, the IDEA *itself* authorizes the

judiciary to grant a money claim against the District of Columbia.

In Calloway v. District of Columbia, the Court of Appeals for the District of Columbia Circuit grappled with Section 130 of the 1999 D.C. Appropriations Act, the language of which is equivalent to the attorneys' fees provisions contained in the 2005 Act.  Calloway v. District of Columbia, 216 F.3d 1, 4 (D.C. Cir. 2000).  "[G]uided by the well-settled principle that '[w]hile appropriation acts are "Acts of Congress" which can substantively change existing law,'" the court held that "'there is a very strong presumption that they do not.'"  Id. at 9 (quoting Bldg. & Constr. Trades Dept., AFL-CIO v. Martin, 961 F.2d 269, 273 (D.C. Cir. 1992)). See also id. (quoting Donovan v. Carolina Stalite Co., 734 F.2d 1547, 1558 (D.C. Cir. 1984) (internal citation and quotation marks omitted) ("'[W]hen appropriations measures arguably conflict with the underlying authorizing legislation, their effect must be construed narrowly.'")).  Accordingly, the court interpreted Section 130 "to accomplish neither more nor less that its plain text state[d]," id. at 12, and declared that "section 130 and IDEA regulate different government authorities: '[t]he IDEA attorney's fees provision provides the courts with discretion . . . to award reasonable attorneys' fees.  By contrast, section 130 governs the District of Columbia's appropriations and right to pay those fees.'"  Id. at 9.  The court therefore found that Congress "did not use section 130 to limit the power of the federal courts to award fees under IDEA." Id. at 12.  Accord Whatley v. District of Columbia, 328 F. Supp. 2d 15, 19 (D.D.C. 2004) (quoting Calloway, 216 F.3d at 12) ("Congress 'did not use [the fee cap] to limit the power of federal courts to award fees under the IDEA.'  It only limited defendants' ability to pay them."); Kaseman, 329 F. Supp. 2d at 23 (citing Calloway, 216 F.3d at 9) ("[T]he D.C. Circuit has held that courts can still award attorney's fees above the statutory cap despite DCPS's lack of authority to pay them.").

Consistent with the precedent established by Calloway and subsequent district court

decisions, this court finds that Section 327(1) of the 2005 Act does not limit its ability to award reasonable attorneys' fees under the IDEA.

## CONCLUSION

For the reasons presented above, plaintiff is entitled to attorneys' fees and costs in the amount of $27,181.13.[1]  The following chart demonstrates how the court arrived at this amount:

| Time Keeper | # Hours Billed | Rate | Total |
|---|---|---|---|
| Gerald Tilman | 30.4 | $375/hour | $11,400.00 |
| James Brown | 1.16 | $350/hour | $406.00 |
| Roberta Gambale | 17.84 | $270/hour | $4,816.80 |
| Ann Ford | 26.4 | $270/hour | $7,128.00 |
| Kelly Dau | 9.0 (reduced to 7.8) | $95/hour | $741.00 |
| Other paralegal and law clerks | 12.18 | $95/hour | $1,157.10 |
| TOTAL FEES | | | $25,648.90 |
| TOTAL COSTS (including educational advocates) | | | $1,532.23 |
| **TOTAL** | | | **$27,181.13** |

An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated:

---

[1] Based on her motion for attorneys' fees and revised submission (which corrected erroneous billing rates), plaintiff sought $27,516.33 in fees and costs. Pl.'s Mot.; Errata, Ex. A, July 25, 2005.  This fee was reduced by the court by $335.20 for a total award of $27,181.13.